Abbas versus Garland. Thank you, Judge Payes. Good morning. May it please the court. My name is David Schlesinger and I'm appearing on behalf of petitioner Mohamed Abbas. With the court's indulgence, I'd like to first begin by discussing the question of whether the BIA applied an incorrect legal standard in assessing Mr. Abbas's motion to reopen so that he could assert asylum withholding and U.N. Torture Convention claims and then move briefly to time permitting to the merits of that motion, particular part of the motion to reopen under the correct legal standard. Of course, I'd be pleased to answer any questions that the court has about other issues at any time. So with regard to the legal standard that the BIA applied, it's a perennial source of frustration among people who litigate frequently in this court who assert petitions for review from denials of motion of motions to reopen that the BIA is inconsistent and even in this particular order is inconsistent regarding the particular legal standard that it applies when adjudicating motions to reopen. As this court held in 2003 in Ordonez v. INS, the correct standard that the BIA is to apply when adjudicating a motion to reopen is whether there is a reasonable likelihood of success such that it would be worthwhile to pursue adjudication of those claims upon reopening. The BIA, however, in adjudicating Mr. Abbas' asylum and withholding of removal and UN Torture Convention claims, applied the standard that it had promulgated in Matter of Quello in a precedent decision in 1992. Matter of Quello requires a showing of likelihood of success and emphasizes that it is a heavy burden that a movement has to... I don't want to disrupt your presentation so much, but a fair reading of the BIA's decision, they use that term heavy burden just as a way of characterizing kind of what the petitioner has to do. But I do think when you look at the decision in whole, it does appear that they understood what the correct burden is, which is the standards of reasonable likelihood on a motion to reopen. I want to clarify a couple of things about what the BIA did to make sure I'm on track with one of the arguments that you're making. So as I understand it, the petition for review was untimely. I mean, the motion to reopen was technically untimely and was a second motion to reopen, if I've got my facts right. The BIA said, assuming equitable tolling applies, we're not going to decide that. We're just going to assume that it applies so that the petition for reopen, they just assumed that it was timely proper and they therefore could get to the merits. And the only issue that caught my attention, which is what I'd like you to address, is the issue of cancellation of removal. Let me first, before I get to... I would skip everything else. Just tell me why the BIA on the motion to reopen erred in not at least granting the motion to reopen with respect to cancellation of removal. Let me first note, Your Honor, that the timeliness question applies in this particular order to some of the claims that Mr. Abbas asserted, particularly the cancellation and what I'd call the Pereira issues that he had asserted. The timeliness issue does not apply to the portion of the motion to reopen regarding materially changed country conditions for purposes of asserting asylum withholding and CAC claims. Second, with regard to cancellation, our argument is this, Your Honor, even severing out what we'd call the Pereira-Nuez Chavez type claims, which we acknowledge are not viable under this court's current case law, though we preserve them for the purpose of potentially asserting them for future review by a non-bank court or by the U.S. Supreme Court. Our argument is that, but for the defective notice to appear, which purportedly triggered a stop time rule, that Mr. Abbas would otherwise have accrued the 10 years of continuous physical presence in the United States necessary to then apply for non-LPR cancellation of removal. And our argument is further that the BIA's holding that the IJ's oral decision and order constituted a separate stop time event is also erroneous. So, you know, Mr. Abbas should, now that he has accrued the 10 years of continuous physical presence, be able upon reopening to apply for non-LPR cancellation. And he has compelling factors, particularly considering the serious health conditions of his mother and his need to attend to those conditions because she has no one else who's capable of helping her in that regard. And further that in the close to 11 years since his original individual calendar merits hearing concluded, he's a radically changed person. He has had no criminal history since then. He's a responsible, hardworking employee of his uncle's mortgage company, mortgage issuance company. And further, as we're going to also pursue in a parallel prosecutorial discretion request that we will soon be following with the office in Los Angeles, we're going to note that Mr. Abbas's earlier conviction for residential burglary has been vacated in post-conviction proceedings, such that he's going to have a more favorable attempt to pursue prosecutorial discretion. So I see my time is rapidly coming to a close. I would note, I'm sorry. Can I just ask for one change of focus, because you are getting fairly close to the end. And that's the change country conditions. And obviously you've got to show that there is a significant change in the conditions in the country. And also that with those changes, you can make out a prima facie case to warrant relief. So I went through your brief. I didn't see what significant changes you were relying upon from 2012 until the current conditions, which would warrant or be meritorious in any material in any kind of way. Tell me what those changes are. Sure, Your Honor. And I will note that I could address your question. I'll make sure you get some time for rebuttal. Thank you very much, Your Honor. Answer John Sessions' question. I would refer, Your Honor, to page AR 313, which is a portion of the U.S. Commission on International Religious Freedoms 2017 Report for Egypt. In that, and let me quote verbatim, in recent years, Egyptian atheists have seen a rise in blasphemy charges as well as growing societal harassment in various Egyptian government-sponsored initiatives to counter atheism. Mr. Abbas has alleged that despite being born as a Muslim, he no longer practices the religion. So there's at least a very real fear that others will impute outright atheism to him, and therefore he will be swept up in this rising tide of anti-atheism, particularly on behalf of, particularly among persons such as himself who are considered lapsed Muslims and now at least have atheism imputed to them. So that's one of the main pieces of evidence we would say to Your Honor. I also thought that you were relying upon the fact that his mother was Christian. As a result, there was some impact upon him because of her religion. Is that what you're relying upon, or is it just straight, he's an atheist, he had been a Muslim, and as a result, he is going to be subject to discrimination? It's a combination of factors, Your Honor, both the imputed atheism, or actual atheism, and the imputation of his mother's conversion to him, because as the country conditions report specify, Muslims in Egypt who convert to Christianity are specifically targeted for animus and even outright persecution. And what you're saying is there's a changed circumstance in regard to that particular reaction to atheism? That is, in 2012, it was not treated in that kind of way, and it has evolved so that now he would be facing discrimination when in fact he would not have back 10 years ago. I'm not saying, Your Honor, that there wasn't a problem in January 2012, but the portion of the Commission on Religious Freedom that I just read to you indicates that the treatment of supposed atheists or reputed atheists in Egypt has worsened over the last several years, at least as of 2016, when essentially the country conditions record closed. If we were to have the opportunity to pursue reopening, we of course would introduce even more contemporaneous evidence regarding that, and we believe that it will show that the conditions still remain very dire for supposed atheists in Egypt. So let's just question here then, on that ground, are your cases that worsening of the condition is a kind of changed country conditions that qualifies? That's correct, Your Honor. Both materially changed country conditions and materially changed personal circumstances. And so, as mentioned, this is rapidly approaching 11 years since the merits hearing concluded, and as my client has matured into young adulthood and that are contrary to how Egyptian society functions, we believe that that warrants reopening under the Ordonius v. INS matter of SV legal scheme. You also mentioned worsening of personal conditions. Worsening personal conditions amounts to changed country conditions. Yeah, ever since this Court issued Maltese v. Ashcroft in 2004, Your Honor, there's a recognition that materially changed country conditions includes materially changed individual circumstances. So, as I just mentioned, Your Honor, our view is that as Mr. Abbas has become older, as he's developed these very strong views about his unwillingness to practice Islam and his strong identification with American society, he's not legally American, but having come to the country when he was 11 years old, he's functionally an American in terms of his views and his acculturation. So, he would be very much at risk if he were to return to Egypt. If there are no further questions, let's hear from the government. Thank you. Thank you, Your Honor. May it please the Court, Dan Goldman, on behalf of the Attorney General. The government asks this Court to uphold the agency decision and deny the petition for review. As counsel for Mr. Abbas recognized, the reconsideration request based on the Supreme Court's decision in Pereira and Ms. Chavez is foreclosed by this Court's jurisprudence, particularly the Court's recent en banc decision in Bastille-Hernandez. Subject to the Court's questions on reconsideration, I turn to the reopening question. The reopening question really divides into two categories. One, the request for reopening to seek cancellation and adjustment of status. Two, the request to reopen to seek asylum and related relief. With regard to cancellation and adjustment of status, as the Board correctly found, the motion to reopen was both time and number barred. It was his second motion to reopen. It was filed well beyond the 90-day deadline for filing a motion to reopen, and there is no applicable exception for reopening to apply for cancellation or adjustment of status. He did have recourse. He could ask, and he did ask, the Board to reopen his case to respond date for consideration of adjustment and cancellation. The Board denied that request. What about equitable tolling? The equitable tolling, Your Honor, that finding applied specifically, and the Board's decision specifically says, we're applying equitable tolling to your request for reconsideration. When the Board turns to reopening, they're looking at, again, two claims for reopening. One, to seek reopening to apply for cancellation and adjustment of status. And the Board says, your motion is untimely to seek cancellation and untimely and number barred to seek cancellation and adjustment. There is no applicable exception. You know, when I read the record here, what struck me was that I thought, it's a little bit, the Board's opinion is a little bit confusing to begin with, but I kind of thought that he was asking for reopening of the cancellation issue on the equitable tolling part of it on the basis that, you know, the law has changed.  I think he did, Your Honor. And there's two significant changes. One, the stop time rule, you know, no longer applies if they get a defect, you know, a notice is not complete under PERARA. So that, you know, that changed significantly. And then I think his conviction is no longer considered a crime of moral turpitude, the burglary conviction. So I don't, you know, those are pretty significant changes that I thought, the argument was that those changes were sufficient to toll, you know, because there's change in law and we had case law that recognizes that. And I thought that's what his argument was. Your Honor, I apologize if I'm misremembering. They clearly made that argument to the BIA in the appellate brief to the BIA. That argument is spelled out clearly. They made that argument, Your Honor, in the motion to reopen. There was no, technically no brief filed to the Board. It was a motion to reopen. Right. They made a motion to, it's in there. Yes, Your Honor. And the two things to distinguish there, one, whether his conviction was still a crime involving moral turpitude, if memory serves, that issue was settled by the time this Court last ruled in his first petition for review. And the government had dialed back some of the arguments that we had initially made. Ultimately, the discretionary decision by the immigration judge, not to, and that was upheld by the Board in the first, and then upheld by this Court in the first petition for review, was based on the fact of his conviction. It was also based on the uncharged misconduct that he ultimately accepted responsibility for. So I apologize if I'm misremembering, but I think the crime involving moral turpitude issue is something of a red herring because it's not an issue here. He's asking the Court- Go ahead. I didn't mean to interrupt. He asked the Board to reopen his case. He also asked them, interestingly, and I think inappropriately, asked for reconsideration as to cancellation. And what he says to the Board in that motion to reopen is, the immigration judge improperly pre-terminated my cancellation application. As a factual matter, that is wrong. It is straight up wrong. Because when he was in 2012, he did not have the required 10 years continuous physical presence. So he didn't apply for cancellation. The immigration judge didn't pre-terminate his application. I think in the Board's decision, they do make note of the fact that he didn't apply. But at the time, the stop time rule would have foreclosed him from being eligible for- Your Honor, respectfully, the stop time rule was not in play when he was in immigration court. The stop time rule comes into consideration, comes into play when an individual has been in the country long enough, but some event has occurred, whether that's the filing of a notice to appear, whether that's a conviction. In this case, no one was talking about the stop time rule in 2011 and 2012 when he was in immigration court because he had not been in the country for 10 years. The stop time rule could have applied if he had been here for longer and the government had argued no- We now know that he satisfies- Yes. Yes, Your Honor. As a result of Pereira. As a result of Pereira, and I would also note, counsel petitioner referred to the Board's finding that the immigration judge's decision also triggered the stop time rule. And I want to make it clear for the court, we filed a 28-J letter after this court's decision in Quebrado Cantor. This court's decision in Quebrado Cantor, intervening precedent there, we are no longer defending that one part of the Board's decision. However, even if the stop time rule has never kicked in as we sit here today, and he is still continuing to accrue continuous presence, he still has to qualify for reopening because of the posture of his case. This case would be very different if he were walking into immigration court for the first time today. But that's not the situation. He had a final order. He had the opportunity to apply for any form of relief, including asylum, which he chose specifically not to do. There was a final order. There was an appeal to the Board. There was a petition for review to this court. So even if the stop time rule has never kicked in, even if he has well more than 10 years, he still has to satisfy and get around the requirements for reopening. The requirements for reopening, he can file, but he cannot be granted a time and number barred motion to reopen unless there's an applicable exception. There is no exception to seat cancellation. He can ask for sua sponte reopening, and he did so. The Board evaluated that and denied it. But after that, he has no recourse. I don't know why. So what you're saying is that is that he can't take advantage of equitable tolling. He could ask for the Board to toll or, Your Honor, he could ask for the Board to toll or excuse the filing requirements set out in the regulations set out in the INA for motions to reopen. But that's not what happened here. What the Board says, we will toll the filing requirements for a motion to reconsider based on perere. It's intervening Supreme Court precedent. We will toll that. We will consider your request for reconstruction on its merits. But when it came to the request for reopening, that's not what the Board did. The Board said there is a time and number bar. They applied the time and number bar. There's no applicable exception to apply for. It could be that they abused their discretion in that regard, though. I'm sorry, Your Honor. I said it could be that they abused their discretion in that regard. Your Honor, I don't believe that Mr. Abbas has even made that argument that the time and number bar should not apply because he can't make that argument. There's no legal basis for the Board to forgive the time and number bars. But the time and number bars are well settled both in the regulation, in the law, and in this Court's jurisprudence. He would have needed to qualify for an exception to seek adjustment and cancellation. There is an applicable exception when it comes to seeking asylum and related relief. That's why, as I noted at the outset, the request for reopening divides into two parts. Part one is cancellation adjustment. The request for reopening to seek cancellation adjustment is time and number barred. No applicable exception. The second part is the request for reopening to seek asylum and related relief. There is an applicable exception if he can establish both a prima facie claim for relief and I see my time has expired. If I could continue, Your Honor. Go ahead. I didn't mean to ask so many questions, but I just found this issue. I understand, Your Honor, but he could ask the Board. I'm sorry, Your Honor. I just think, go ahead. He asked the Board when it came to the second part of reopening, the part of reopening his reopening request where he was saying, please reopen my case for asylum and related relief. He has to show both the prima facie case for eligibility, but also that there has been a relevant change in country conditions. His motion to reopen and his opening brief focused almost exclusively on making a claim for relief, a prima facie claim for relief. Where they failed was in trying to make a claim that there was a change, a relevant change in country conditions. And in fact, his motion to reopen at page 92 of the record, at page 95 of the record, the motion states there's been a relevant change. What's important to note is what comes after those statements or in fact, what doesn't come after them, which is any citation to record evidence. He dropped over 130 pages of country conditions evidence on the Board and his motion to reopen failed to specifically point to any evidence in that 130 pages that showed a relevant change in country conditions. It was also brought up earlier, Your Honor, the question of his mother's original asylum claim and what is he now saying that he's eligible for. As the immigration judge noted in this case, there was evidence in the record of religious violence even before he was in immigration court. And the claim that he's now seeking to raise is at minimum similar, if not very similar, to the claim that ultimately got his mother asylum. But when he went into immigration court, he chose not to ask for asylum based on religion. And on a related note, Your Honor, his claim is with regard to political asylum is that he would be viewed as some sort of Western agitator or dissident. In order to make that claim, he has to again show two things. One, that conditions are bad in Egypt. But two, and this is where his claim fails, he has to show that conditions were okay back in 2010, 11, and 12 for political dissidents. His own brief undercuts that. His own brief talks about how, I want to make sure I'm quoting it correctly. His own brief at page seven says, the Egyptian government, this is page seven of his brief, the Egyptian government routinely imprisons those speaking out about the current regime. He cites page 989 of the record. I think it's important to note that page 989 of the record does not refer to conditions in 2017 or 2018. It refers to conditions in 2010 and 2011. That evidence was submitted in his original claim, sorry, in his original case before the immigration court. At pages six, seven, and eight of his opening brief, he cites to evidence that was not put to the board in the motion to reopen. He also cites evidence that was put to the board, but those citations are interwoven, and he doesn't distinguish between the two. Basically, what you're saying is that he failed to show a change in circumstance over the period of time. The requirement is that he actually show a change in country conditions over that time, and there was no effort to do that. That's your point? That is your honor, and to conclude, respectfully, it's not... Just ask one question at the end. Your opposing counsel started with the standards, talking about the standards and the conflict within the BIA's decision as to what a standard they apply. Well, it was heavy burden as opposed to the unlikely success. Did you see any conflict in the BIA's decision about what standard was applied, or did they in fact apply the reasonable likelihood of success standard? The short answer is the board properly applied the appropriate standard, your honor, and we'd rest on the arguments in our brief. Again, your honor, the question is he has to connect the dots. With regard to asylum and related relief, he cannot simply drop 130-plus pages of documents on the board and say, here it is, go look. This court has noted in various contexts, both in immigration cases and other cases, that it's not the place of the tribunal, whether it's this court or the Board of Immigration Appeals, to go searching out for the evidence and searching out for the arguments to make a claim. It's quoting the old Seventh Circuit maxim, it's the tribunal is not the pig hunting for truffles. And what he did here was essentially that, when he puts in his motion to reopen, he claims it's statements of counsel, not supported by evidence, that there's a change in conditions. His opening brief makes the same arguments. We pointed that out in our answering brief, and it's only in his reply brief, only in his reply brief, that he actually attempts to cite to specific places in the record where he claims there's evidence of changed country conditions. I would respectfully point out, two of the places that he cites in his reply brief are page 92 and 95 of the record. What he's citing to are his own counsel statements, not evidence. For all those reasons, Your Honor, the government asked this court to deny the petition for review. Okay, let's put two minutes back on the clock for some rebuttal. Thank you very much, Your Honor. Let me try to address some of your queries, Judge Páez, regarding what was actually styled, and I think it may have been referred to incorrectly at times, as Mr. Abbas's motion to reconsider regarding what at the time was Pereira's, now subsequently Neshava's, issue concerning the stop time rule. On page AR2, the BIA explicitly stated, the motion to reconsider has been filed at a time and will be denied. There was no discussion in that context about any kind of numerical bar. The next sentence says, even if equitable tolling applies, the respondent's motion to reconsider will be denied in the merits. There was no discussion on the merits regarding the equitable tolling arguments that, as you correctly noted, Judge Páez, we asserted both in the BIA and we believe we've preserved here. Of course, to the extent that the IJ's oral decision in order constituted a stop time event, vacating those would remove that impediment whatsoever. We believe, and submit in accordance with what you were saying, Your Honor, that there have been significant intervening changes in the law since Mr. Abbas first, since he completed his merits hearing in 2012. You have Neshava's, you have Pereira, you have other cases interpreting them. He was not eligible at that time because he had not yet accrued 10 years of continuous presence. He now has that. He has exceeded that by many years. Reopening, whether it's through a granting of the motion to reopen, whether it's granting of the motion to reconsider, will allow him the opportunity to pursue non-LPR cancellation and indeed update the record, which has changed significantly in the approximately 11 years since that individual calendar hearing concluded. If there are no further questions, I'd be pleased to submit. Okay. Thank you. We'll thank both of you for your helpful arguments this morning. And with that, the matter is submitted.
judges: TASHIMA, PAEZ, Sessions